## HART H. HARRIS *et al.*

*v.*

## GEORGE M. PULLMAN *et al.*

1.  COURTS OF EQUITY — *jurisdiction.*   Ordinarily, a court of equity
having personal jurisdiction of the defendant will, in case of fraud, of
trust or of contract, grant relief, although lands not within the jurisdiction
of the court shall be affected by the decree, upon the principle that, in
equity, the primary decree is *in personam* and not *in rem;* still in such
cases relief will not be granted, unless that sought is of such a nature as
the court is capable of administering in the particular case, for a court of
equity has not, necessarily, jurisdiction over a subject of ordinary equity
cognizance, simply because the parties are within the former.

2.  DECREE—*can only bind property within jurisdiction of the court, not
person not served with process.*   A decree rendered against parties who are

Statement of the case.

beyond the limits of the State, upon constructive notice by publication un-
der our statute, can only affect property within the jurisdiction of the court.
The person can not be bound, unless it has been reached by the process of
the court, and, as the decree can not operate extra-territorially, it is impos-
sible that it can bind property thus located.

3.   A court of equity in this State, which has jurisdiction of a portion
of the defendants, only, the other defendants being residents of another
State, and not personally within the jurisdiction of the court, can not grant
relief as to property held by such non-resident defendants in the State where
they reside.

4.   JURISDICTION—*should not be entertained unless complete justice can be
done.*   A court whose decree will leave a party in peril of being subjected
to another and, may be, directly opposite decree or judgment in regard to
the same property, in a different jurisdiction, is not in a condition to do
complete justice in the case, and should, therefore, decline to entertain
jurisdiction.

5.   Where the record shows that the property which is the subject matter
of a suit in equity in this State is situated in another State, and that suit
in relation thereto is pending in such other State between the same parties,
and that the court of that State is in a condition to do justice to all the par-
ties, and that the court in this State has not jurisdiction of all the necessary
parties, it will refuse to entertain jurisdiction, and leave the parties to re-
sort to the court of the State where the property is situated, and where
complete justice to all parties can be done.

6.   STATE COURTS—*can not enjoin suits pending in courts of other State.*
There is no question as to the right of a court to restrain a person over
whom it has jurisdiction, so that he can be proceeded against by a personal
attachment from commencing suits within a foreign State; but it is inconsis-
tent with inter-State harmony, that after a suit has been commenced in one
of the States, the prosecution thereof should be controlled by the courts of
another State.

APPEAL from the Superior Court of Cook county; the Hon.
SAMUEL M. MOORE, Judge, presiding.

This was a bill in chancery, by John S. Harris and Charles
H. Wheeler, who are residents of Wisconsin, and against George
M. Pullman, David A. Gage and Franklin Parmelee, who are
residents of Illinois, and also James E. Lyon, Charles H.
Moore and Henry D. Towne, who are non-residents of Illinois,
praying that the defendants be declared to be trustees in posses-
sion of certain mines, mining property, etc., in Colorado, for the
complainants; that they be required to account for the rents,

issues, receipts, sales and profits of such property; that they be required to surrender possession of the property to complainants, and that they be perpetually enjoined from interfering with, entering upon or exercising any control over the property, and from proceeding to collect, through proceedings in the Wisconsin courts, certain judgments obtained by the defendants against the complainants, in the courts of Colorado.

The defendants residing in this State were personally served with process. The other defendants had notice merely by publication, and they were in nowise personally before the court.

The property, about the ownership and possession of which the litigation is chiefly concerned, is described as follows:

"An equitable one-quarter of a mining claim on Gregory Lode, described as claim No. 7 on said lode, south-west from the gulch; and an undivided one-third interest in a tunnel, about two rods below the Manhattan mill, which was purchased from Barber & Leper; also, the Discovery claim; claim No. 1. north-east of the Discovery claim, on the Milwaukee Lode; 150 feet on the Monmouth Lode, being mining claim No. 9; the half of mining claim No. 10; the north-east half of mining claim No. 4, on the Monmouth Lode; also, the ground and water power claim, with all the privileges and appurtenances thereto belonging, next above the claim of Newlin & Co., extending from bank to bank, a distance of 2500 feet up the North Clear creek, together with the steam quartz mill situated on the last mentioned claim, and all the machinery, stock, tools, fixtures and appurtenances belonging to the mill; also, a certain other mill claim near the mouth of Toll road, and extending from bank to bank up the gulch, a distance of 500 feet; also, lot No. 1, east of a house known as the Ferris house, and the dwelling house situated thereon, and a lot east of and adjoining the last mentioned lot, being 40 by 100 feet; all which property is in Enterprise mining district, in the county of Gilpin, and Territory of Colorado."

Of this property, lode No. 7 was conveyed, by the defendants, to "The Consolidated Gregory Company," for which it is sought to make them account, at the price received.

The defendants, answering, claim that they are the legal owners of this property, by virtue of deeds from the sheriff of Gilpin county, Colorado, made pursuant to sales had on executions issued on judgments in favor of certain of the defendants, and against the complainants, in courts of competent jurisdiction in that county.

Complainants deny the validity of the judgments, sales and deeds, and allege that the defendants became possessed of the property by virtue of a mortgage executed to them by the complainants' agents, Kimball & Reed, whose acts, in this respect, complainants expressly ratify.

There are many other matters set up in the pleadings, and about which evidence was given on the hearing; but they are immaterial to the questions discussed in the opinion.

The court below decreed in favor of the defendants, and that the bill be dismissed.

Messrs. WILLIAMS & THOMPSON, and Mr. THOMAS L. OGDEN, for the appellants.

Mr. JOHN N. JEWETT, for appellees Pullman, Gage and Parmelee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Having entertained some doubts whether our judgment in the present case, as heretofore announced, was based on correct grounds, we ordered a rehearing. The counsel of the respective parties, availing of the opportunity thus afforded, reargued the questions involved with much elaboration and ability; and profiting by this assistance, we have again considered, with care, the judgment it is proper we should give.

Our conclusion remains as before. It is necessary to consider but a single question, and we shall do little more than re-state our views thereon as expressed in our former opinion.

Ordinarily, a court of equity, having *personal jurisdiction of the defendant*, will, in case of fraud, of trust or of contract, grant relief, although lands not within the jurisdiction

of the court shall be affected by the decree; and this is upon the principle that, in equity, the primary decree is *in personam* and not *in rem.* Still, in such cases, relief will not be granted unless that sought is of such a nature as the court is capable of administering in the particular case; for " a court of equity has not, necessarily, jurisdiction over a subject of ordinary equity cognizance, simply because the parties are within the former." 2 Story's Equity Jurisprudence, § 744 a.

Our statute provides for constructive notice, by publication, to defendants in chancery causes, where they are beyond the limits of the State, or, on due inquiry, can not be found; but the decree thereupon authorized can only affect property within the jurisdiction of the court. The *person* can not be bound, unless it has been reached by the process of the court, and since the decree can not operate extra-territorially, it is impossible that it can bind property thus located. *Firebaugh* v. *Hall*, 63 Ill. 81, and *Galpin* v. *Page*, 18 Howard, 350, cited by counsel for appellants, and relied on in their original argument, assert no rule to the contrary.

In the first of these cases, title was claimed by virtue of a levy and sale under a certain writ of attachment. The suit was commenced in assumpsit, against two defendants, one of whom, only, was served with process. Judgment was rendered against him, and a *scire facias* ordered, which was never issued, against the other defendant. The attachment professed to be sued out in aid of the *scire facias.* It was held, inasmuch as the *scire facias* was not issued, the attachment was void. All that was there said was said in discussing the validity of the attachment, and there is nothing in the opinion contemplating that a notice, by publication only, conferred jurisdiction over the *person*, or that a judgment rendered on such notice could operate further than to authorize the sale of the *property attached.*

In the other case, the land which was the subject of litigation was within the State, while the party, whose title was sought to be thereby divested, on notice by publication, was a resident of another State. What is said in the opinion by way

of argument or illustration, which is supposed by appellants' counsel to sustain their position, is, therefore, to be understood as predicated upon this state of case; and we think the most pertinent portion of the opinion is in diametrical opposition to their position. The court say: " The tribunals of one State have no jurisdiction over the persons of other States, unless found within their territorial limits. * * * * * Their process can not be executed beyond those limits, and any attempt to act upon persons or things beyond them would be deemed a usurpation of foreign sovereignty, not justified or acknowledged by the laws of nations." See p. 367.

It is said, in Cooley on Constitutional Limitations, under the head of "*Protection to property by the law of the land*," in discussing what effect decrees rendered on notice by publication shall have, beyond the State: " But such notice is restricted in its legal effect, and can not he made available for all purposes. It will enable the court to give effect to the proceeding so far as it is one *in rem*, but when the *res* is disposed of, the authority of the court ceases. The statute may give it effect so far as the subject matter of the proceeding is within the limits and, therefore, under the control of the State; but the notice can not be made to stand in the place of process, so as to subject the defendant to a valid judgment against him personally." And to the same effect is the language of Mr. Justice McLEAN, in *Boswell's Lessees* v. *Otis*, 9 Howard, at p. 348. He says: "Jurisdiction is acquired in one of two modes: first, as against the person of the defendant, by service of process; or, secondly, by a proceeding against the property of the defendant, within the jurisdiction of the court. In the latter case, the defendant is not personally bound by the judgment beyond the property in question. And it is immaterial whether the proceeding against the property be by an attachment or a bill in chancery. It must be substantially a proceeding *in rem*. A bill for the specific execution of a contract to convey real estate is not strictly a proceeding *in rem*, in ordinary cases, but where such a proceeding is authorized by

statute, on publication, without personal service of process, it is substantially of that character."

It was in conformity with this view of the law that this court, in *Western Union Telegraph Co.* v. *Pacific and Atlantic Telegraph Co.* 49 Ill. 90, refused to extend an injunction enjoining the defendants from attaching their wires to the poles upon which the wires of the complainant were suspended, in the State of Indiana.

Applying the law, as thus recognized, to the facts, we find the property here in litigation is all in Colorado, so that it can not be reached by any decree rendered by the courts of this State. Pullman, Parmelee and Gage reside here, and are personally served with process; but the mortgage executed by Kimball & Reed, as agents of Harris and Wheeler, and which, by the bill, is expressly ratified and declared to have been made with the approval and by the authority of Harris and Wheeler, conveys the legal title of the property in controversy to Lyon, Pullman and Moore; and the subsequent purchase at sheriff's sale, and conveyance by the sheriff of Gilpin county, Colorado, purports to convey the title to the same persons. The prayer of the bill is not only that the defendants be required to account as trustees or mortgagees in possession of the property, but also that they yield the quiet and peaceable possession of so much of it as remains unsold or unchanged in its character, and that they be perpetually enjoined from entering upon or exercising any control over such property. It appears from the bill and answer, as well as from the evidence, that the property sold is only that described as "claim No. 7 on the Gregory Lode," so that the possession is sought of all the other property described in the bill. Lyon and Moore, not having been personally served with process, and being residents of other States, can not be compelled to surrender their interests in the property; and the other defendants, who are personally within the jurisdiction of the court, can only be compelled to surrender possession of such interests as they themselves have. The court below was, hence, powerless to grant this part of the prayer. *Penn* v. *Hayward,* 14 Ohio

St. R. 302. But conceding, as is claimed, the right of appellants to abandon all of the prayer for relief, except that which relates to accounting, we do not conceive the case is more favorable to appellants. Preliminary to an accounting for the "rents, issues, receipts, sales and profits" of the property, as prayed, it must be decreed the parties occupy the relation to the property charged in the bill. That they do so is not conceded, but it is expressly denied in the answer filed; and it is therein alleged, on the contrary, that defendants are the lawful owners of the property, having acquired the title thereto in good faith. Manifestly, this is a question upon which Lyon and Moore are entitled to be heard. They could not be decreed to be co-trustees of the property by reason of the title having been acquired in bad faith, without being made parties to the suit; and, if they were necessary parties, they should have been within the control of the court, so that the decree would be conclusive against them everywhere.

A decree here, finding the relations of the parties to the property to be as charged in the bill, and requiring an accounting on that hypothesis, being obligatory only upon the parties before the court, could be of no avail in any contest with Lyon and Moore in regard to the property in Colorado, where it has its *situs.* The courts there might reach a different conclusion, and, having control of the property, there would be no difficulty in enforcing their decrees.

It would seem too plain to admit of argument, that a court whose decree will leave a party in peril of being subjected to another and, it may be, directly opposite decree or judgment in regard to the same property, in a different jurisdiction, is not in a condition to do complete justice in the case, and should, therefore, decline to entertain jurisdiction.

The record discloses the same litigation is pending in the Colorado courts. They are in a condition to do justice to all the parties, by rendering such a decree as shall fully and finally settle all the questions growing out of the acquisition and use of the property; and to that jurisdiction alone, in our opinion, appellants should resort.

So much of the bill as seeks to enjoin Parmelee and Gage from proceeding against Harris and Wheeler on the records of the judgments obtained in Colorado, in the courts of Wisconsin, is a mere incident to the principal relief sought by the bill, and the latter failing, the former must fail with it.

Moreover, the allegation in the bill is that suits at law have been commenced on such records, " in the county court of Milwaukee county, in the State of Wisconsin, where the complainant Wheeler resides."

There is no question as to the right to restrain a person, over whom the court has jurisdiction, so that he can be proceeded against, by a personal attachment, from commencing suit within a foreign State; and the English practice was to allow the prosecution of suits already commenced to be thus enjoined. But it has been held, in this country, that, after suits are commenced in one of the States, it is inconsistent with interState harmony that their prosecution should be controlled by the courts of another State. *Mead* v. *Merritt*, 2 Paige, 404; *Bicknell* v. *Field*, 8 id. 443.

The decree is affirmed.

*Decree affirmed.*